UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re:

DON KARL JURAVIN,

    Debtor.
_____/

DON KARL JURAVIN,
Case No. 6:18-bk-06821-KSJ

    Applicable Debtor.
_____/

DENNIS D. KENNEDY,
AS CHAPTER 7 TRUSTEE OF THE
ESTATE OF DON KARL JURAVIN,

    Plaintiff,
v.

PSR DEVELOPERS, LLLP, a Florida
Limited liability partnership,

    Defendant.
_____/

Chapter 7

Case No. 6:18-bk-06821-KSJ

Case No. 6:20-bk-01801-KSJ

*Jointly Administered with*
Case No. 6:18-bk-06821-KSJ

Adv. Pro. No. _____

## **COMPLAINT**

Dennis D. Kennedy, as Chapter 7 Trustee for the estate of Don Karl Juravin ("Trustee"), through counsel, hereby files this Complaint to Avoid and Recover Fraudulent Transfers against PSR DEVELOPERS, LLLP, pursuant to 11 U.S.C. §§ 544, 548, and 550 and Chapter 726, *Florida Statutes* ("FUFTA"), and in support thereof, alleges as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. §§ 1334 and 157.

2. Venue is proper in this district under 28 U.S.C. § 1409.

3. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157 (b)(2)(A), (E), and (H).

## THE PARTIES

*The Trustee*

4. Plaintiff is the Chapter 7 Trustee for the bankruptcy estate of Don Karl Juravin.

5. Dennis D. Kennedy also serves as the chapter 7 trustee for the estate of Must Cure Obesity, Co., case number 6:20-bk-01801-KSJ, pending in this Court ("MCO Bankruptcy Case").

*PSR Developers*

6. PSR Developers is a Florida limited liability limited partnership operating and doing business in Lake County, Florida.

7. PSR Developers' principal address is 15317 Pendio Drive, Montverde, Florida, 34756.

8. PSR Developers is a real estate developer that develops residential housing in Florida, including in the Bella Collina community in Lake County, Florida.

9. PSR Developers developed the real property located at 15118 Pendio Drive, Montverde, Florida 34756 ("Property"), which was subsequently purchased by the Debtor and his wife, Anna Juravin.

## BACKGROUND

### *The Debtor's Business Affairs.*

10. From 2009 through at least 2016, Debtor was an owner, officer, or representative of numerous entities, including without limitation, Roca Labs, Inc. ("Roca Labs"); Roca Labs Nutraceutical USA, Inc. ("RLN"); Must Cure Obesity, Co. ("MCO"); Juravin, Incorporated ("JINC"); and Zero Calorie Labs, Inc. ("ZCL") (collectively, the "Juravin Entities").

11. Debtor exercised authority and control over the Juravin Entities' advertising and sale of dietary supplements and food products, including the Roca Labs "Formula" and "Anti-Cravings" powder, to consumers throughout the United States, as a safe and cost-effective alternative to gastric bypass surgery to combat obesity and achieve substantial weight-loss.

12. Individual consumers paid the Debtor and/or the Juravin Entities hundreds of dollars for these worthless weight loss products which were nothing more than a fake medical regime purportedly designed to help consumers lose weight.

13. Debtor and the Juravin Entities intended to deceive consumers by marketing the weight-loss products so that the consumers would buy the weight-loss products and enrich the Debtor.

14. At all times material hereto, acting alone or in concert with others, Debtor formulated, directed, controlled, had the authority to control, or participated in the false advertising and other deceptive business practices perpetrated by the Juravin Entities.

15. Debtor and the Juravin Entities operated as a common enterprise while engaging in deceptive business practices and fraudulent activities.

16. Each of the Juravin Entities was created to further the deceptive and fraudulent weight-loss scam, or to conceal funds of the scam or of other scams created or perpetrated by the Debtor.

17. Each of the Juravin Entities was created, formed, and operated for an improper purpose.

18. At all times material hereto, Debtor had authority and control over the Juravin Entities.

19. At all times material hereto, the Juravin Entities were mere instrumentalities of the Debtor.

20. At all times material hereto, Debtor used the bank accounts of the Juravin Entities as his own personal piggy bank.

21. At all times material hereto, Debtor maintained control of the accounts of the Juravin Entities.

22. At all times material hereto, Debtor transferred substantial funds between and among the bank accounts of the Debtor and the Juravin Entities.

23. For example[1], in the four-year period prior to the Juravin Petition Date the Debtor transferred the following:

    a. at least $2,202,915.58 from his personal accounts to accounts held by MCO;

    b. at least $2,833,206.28 from MCO's accounts to his personal accounts;

    c. at least $1,000,077.00 from MCO's accounts to JINC's accounts;

    d. at least $2,005,557.00 from his personal accounts to JINC's accounts;

---

[1] The specific transfers referenced in this paragraph and the following paragraph are meant as examples only. The Debtor failed to adequately respond to discovery in this case and the Trustee obtained a "break order" (Doc. No. 502) to gain access to the Debtor's electronic records. The Trustee has only recently obtained access to those records, which will likely disclose more transfers of this type.

  e. at least $587,392.15 from JINC accounts to the Debtor's personal accounts;

  f. at least $476,710.05 from the JINC accounts to MCO's accounts;

  g. at least $964,400.00 from his personal accounts to accounts held by RLN.

24. From November 1, 2012 to January 29, 2016, the Debtor transferred the at least $1,834,731.43 from RLN's accounts to his personal accounts, and at least $1,160,100.00 from RLN's accounts to JINC's accounts.

25. Due to the Debtor's intermingled accounts, and the extent of the transfers between and among such accounts, a transfer from an account associated with a Juravin Entity constitutes a transfer of property of the Debtor.

## **PROCEDURAL HISTORY**

### *The FTC Case.*

26. On September 24, 2014, the Federal Trade Commission ("FTC") filed a Complaint for Permanent Injunction and Other Equitable Relief, initiating case number 8:15-cv-02231, in the United States District Court for the Middle District of Florida ("FTC Case"), against Roca Labs; RLN; Don Juravin; and George C. Whiting, alleging claims for deceptive trade practices under Sections 5(a) and 12 of the Federal Trade Commission Act.

27. On February 19, 2016, the FTC filed an Amended Complaint to name additional defendants: MCO; JINC; and ZCL.

28. The FTC alleged that Debtor and his codefendants falsely or deceptively advertised their weight-loss products, causing over $25 million in consumer injury.

29. The FTC also alleged Debtor and his codefendants unfairly used non-disparagement clauses in their sale terms for these products as part of their scheme, purporting to

prohibit consumers from making truthful or non-defamatory negative comments or reviews about Debtor and his codefendants, their products, or their employees.

30. The District Court entered a temporary restraining order against Debtor and his codefendants to halt their fraudulent scheme, and later entered a preliminary injunction and asset freeze order.

31. In April 2018, the FTC moved for summary judgment against Debtor and his codefendants on all counts, including its claim for monetary relief.

32. Debtor, who was represented by counsel throughout the FTC Case, opposed the FTC's motion and moved for partial summary judgment solely on the unfair non-disparagement clause claim.

33. In September 2018, the District Court issued an order granting summary judgment to FTC on all counts as to liability, but requiring further briefing as to the amount of monetary relief.

34. The District Court denied Debtor's motion for partial summary judgment.

35. In the Summary Judgment Order, the District Court found that Debtor and his codefendants were liable for violating Sections 5 and 12 of the FTC Act because they:

    a. made false and unsubstantiated weight-loss claims about their products;

    b. falsely claimed that use of their products was scientifically proven to have a ninety-percent success rate in forcing users to eat half their usual food intake and cause substantial weight loss;

    c. deceptively failed to disclose their financial relationship to testimonialists who worked for them, and their control of a supposedly independent and objective information website that they used to promote their products;

    d. misrepresented the nature of that purportedly independent site;

    e. misrepresented that they would keep their customers' private health information confidential;

    f. misrepresented that consumers had agreed to non-disparagement clauses in exchange for a substantial discount on the products;

    g. unfairly suppressed negative information about Debtor and his codefendants and their falsely advertised products, to the detriment of subsequent purchasers, by making threats to sue, and filing of lawsuits against, dissatisfied consumers for violating non-disparagement clauses in their online sales contracts.

36. Further, the Honorable Mary Scriven of the United States District Court for the Middle District of Florida found Debtor jointly and severally liable with the Juravin Entities for their deceptive conduct because they operated as a common enterprise under his ownership and control, with common officers, business functions, employees, and office locations, he knew about the false and deceptive representations, he participated in the deceptive acts, and he had authority to control them.

37. On November 6, 2018, the District Court issued an order for $25,246,000.00 in monetary relief against Debtor and his codefendants.

38. On January 4, 2019, the District Court entered a permanent injunction and a Final Judgment against Debtor and the Juravin Entities in the amount of $25,246,000.00.

***The Juravin Bankruptcy Case.***

39. On October 31, 2018 (the "Juravin Petition Date"), the Debtor, Don K. Juravin, filed this Chapter 7 bankruptcy case (the "Juravin Bankruptcy Case").

40. The Trustee was duly appointed as the Chapter 7 Trustee.

41. On September 16, 2019, upon the Debtor's motion, the Juravin Bankruptcy Case was converted to Chapter 11 from Chapter 7.

42. On March 16, 2020, after sustaining all objections to confirmation of the Debtor's proposed Chapter 11 plan and finding that the Debtor "is unable to articulate any reasonable way to succeed in [the] Chapter 11 case", the Court re-converted the case back to Chapter 7.

43. On October 5, 2020, the United States Trustee conducted a chapter 7 trustee election.

44. Trustee was duly elected as Chapter 7 Trustee.

### *The MCO Bankruptcy Case.*

45. On January 31, 2020, Must Cure Obesity, Co. filed a voluntary Chapter 11 bankruptcy case, case number 6:20-bk-1801 (the "MCO Bankruptcy Case").

46. On May 29, 2020, the MCO Bankruptcy Case converted from Chapter 11 to Chapter 7.

47. On May 29, 2020, Trustee was appointed as the Chapter 7 Trustee in the MCO Bankruptcy Case.

48. On November 19, 2020, the Court ordered the Juravin Bankruptcy Case and the MCO Bankruptcy Case to be jointly administered.

### **FACTUAL ALLEGATIONS**

### *The PRS Developers Loan*

49. On or about January 8, 2016, Debtor and his wife, Anna Juravin purchased the Property.

50. Defendant financed the purchase of the Property through a note and mortgage, and later an amended note (the "Loan").

*The Fraudulent Transfers by the Debtor*

51. Beginning in or around February 29, 2016 until in or around June 5, 2019, the Debtor prepaid the Loan using non-exempt funds.

52. Within the four years prior to the Juravin Petition Date, Debtor transferred:

    a. At least $235,000.00 to Defendant from his personal accounts;

    b. At least $27,320.00 to Defendant from JINC accounts;

    c. At least $116,000.00 to Defendant from MCO's accounts;

    d. upon information and belief, Debtor made certain prepayments to Defendant for maintenance and repairs, in an amount not less than $40,000.00.

(collectively, the "PSR Transfers"). The PSR Transfers are further reflected in the Schedule of Payments attached hereto as **Exhibit A.**

53. The PSR Transfers were transfers of non-exempt funds in order to pay down the debt owed on an allegedly exempt asset.

54. The PSR Transfers were transfers of funds obtained by the Debtor through the deceptive and fraudulent weight-loss scam he perpetrated through the Juravin Entities.

55. The PSR Transfers were transfers of ill-gotten gains.

### COUNT I: ACTUAL FRAUD
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS

56. The Trustee realleges paragraphs 1 through 55 as if fully set forth herein.

57. This is an adversary proceeding to recover fraudulent transfers pursuant to 11 U.S.C. §§ 544(b)(1), 548 (a)(1)(A) and 550, and Florida Statutes §§ 222.30, 726.105(1)(a) and 726.108.

58. Within four (4) years prior to the Petition Date, Debtor effectuated the PSR Transfers, in the amount of at least $418,320.00, to or for the benefit of the Defendant.

59. The PSR Transfers were made with the actual intent to hinder, delay, or defraud present and future creditors of the Debtor.

60. Debtor made the PSR Transfers in an effort to hinder, delay, or evade his creditors.

61. At the time of the PSR Transfers, Debtor was insolvent or became insolvent shortly thereafter.

62. Debtor was insolvent at the time of the PSR Transfers in that his liabilities exceeded his assets.

63. The PSR Transfers are avoidable and should be avoided, pursuant to and under Fla. Stat. §§ 222.30, 726.105(1)(a), 726.108, and 11 U.S.C. §§ 544(b)(1) and 548.

64. Under 11 U.S.C. § 550(a), the Trustee may recover the PSR Transfers for the benefit of the estate, to the extent that the PSR Transfers are avoided under 11 U.S.C. §§ 544 and 548 and the FUFTA.

65. There is at least one creditor holding an unsecured claim under 11 U.S.C. § 502 who would have standing to bring a claim under FUFTA.

WHEREFORE, the Trustee demands a judgment against Defendant as follows: (i) that the PSR Transfers, in the amount of at least $418,320.00, were fraudulent and avoidable under 11 U.S.C. §§ 544(b), 548(a)(1)(A), and 550, and FUFTA; (ii) avoiding the PSR Transfers and entering a judgment in favor of the Trustee for the value of the PSR Transfers pursuant to 11 U.S.C. § 550, plus pre-judgment interest from the date of the PSR Transfers and costs of the suit or recovery of the PSR Transfers; (iii) an attachment or other provisional remedy against the PSR Transfers in

accordance with applicable law; and (iv) for any such further relief that this Court deems just and proper.

Dated October 4, 2021.

/s/Bradley M. Saxton
Bradley M. Saxton, Esquire
Florida Bar No. 0855995
bsaxton@whww.com
Lauren M. Reynolds, Esquire
Florida Bar No. 112141
Lreynolds@whww.com
**Winderweedle, Haines, Ward
 & Woodman, P.A.**
Post Office Box 880
Winter Park, FL 32790-0880
(407) 423-4246
(407) 645-3728 (facsimile)
Attorneys for Dennis D. Kennedy,
Trustee

-and-

/s/ *James D. Ryan*
James D. Ryan, Esq.
Florida Bar No. 0976751
jdr@ryanlawgroup.net
lauren@ryanlawgroup.net
**Ryan Law Group, PLLC**
636 U.S. Highway One, Suite 110
North Palm Beach, FL 33408
Main: (561) 881-4447  Fax: (561) 881-4461
Special Counsel to Dennis D. Kennedy,
Trustee

# EXHIBIT A

| | | | | | |
|---|---|---|---|---|---|
| *In re:* Don Karl Juravin | | | | | |
| Case No.: 18-bk-06821-CCJ | | | | | |
| Schedule of Payments to PSR Developers | | | | | |
| During the Period of October 31, 2014 Through October 31, 2018 | | | | | |
| *(Sorted Chronologically)* | | | | | |
| Institution | Account Name | Account No. | Payee | Date | Amount |
| Chase | Juravin, Incorporated | x8193 | PSR Developers | 08/15/16 | $ (6,830.00) |
| Chase | Juravin, Incorporated | x8193 | PSR Developers | 05/23/17 | (6,830.00) |
| Chase | Juravin, Incorporated | x8193 | PSR Developers | 07/13/17 | (6,830.00) |
| Chase | Juravin, Incorporated | x8193 | PSR Developers | 08/15/17 | (6,830.00) |
| **Total Payments from Juravin Incorporated Accounts** | | | | | **$ (27,320.00)** |
| JP Morgan Chase | Must Cure Obesity, Co | x7028 | PSR Developers | 01/26/16 | (6,830.00) |
| JP Morgan Chase | Must Cure Obesity, Co | x7028 | PSR Developers | 02/09/16 | (6,830.00) |
| JP Morgan Chase | Must Cure Obesity, Co | x7028 | PSR Developers | 03/02/16 | (6,830.00) |
| JP Morgan Chase | Must Cure Obesity, Co | x7028 | PSR Developers | 05/25/16 | (6,830.00) |
| JP Morgan Chase | Must Cure Obesity, Co | x7028 | PSR Developers | 06/17/16 | (6,830.00) |
| JP Morgan Chase | Must Cure Obesity, Co | x7028 | PSR Developers | 06/30/16 | (6,830.00) |
| JP Morgan Chase | Must Cure Obesity, Co | x7028 | PSR Developers | 07/22/16 | (6,830.00) |
| JP Morgan Chase | Must Cure Obesity, Co | x7028 | PSR Developers | 07/26/16 | (6,830.00) |
| JP Morgan Chase | Must Cure Obesity, Co | x7028 | PSR Developers | 08/29/16 | (6,830.00) |
| JP Morgan Chase | Must Cure Obesity, Co | x7028 | PSR Developers | 09/07/16 | (6,830.00) |
| JP Morgan Chase | Must Cure Obesity, Co | x7028 | PSR Developers | 11/09/16 | (6,830.00) |
| JP Morgan Chase | Must Cure Obesity, Co | x7028 | PSR Developers | 01/18/17 | (6,830.00) |
| JP Morgan Chase | Must Cure Obesity, Co | x7028 | PSR Developers | 03/14/17 | (6,830.00) |
| JP Morgan Chase | Must Cure Obesity, Co | x7028 | PSR Developers | 04/25/17 | (6,830.00) |
| JP Morgan Chase | Must Cure Obesity, Co | x7028 | PSR Developers | 05/04/17 | (6,830.00) |
| JP Morgan Chase | Must Cure Obesity, Co | x7028 | PSR Developers | 06/19/17 | (6,830.00) |
| JP Morgan Chase | Must Cure Obesity, Co | x7028 | PSR Developers | 07/13/17 | (6,830.00) |
| **Total Payments from Must Cure Obesity Co. Accounts** | | | | | **$ (116,110.00)** |
| Chase | Don K Juravin | x8216 | PSR Developers | 12/18/15 | (200,000.00) |
| TD Bank | Don K Juravin | x1107 | PSR Developers | 09/18/18 | (35,000.00) |
| **Total Payments from Personal Bank Accounts** | | | | | **$ (235,000.00)** |
| **Total Payments to PSR Developers** | | | | | **$ (378,430.00)** |